## Sobrinos de Portilla *v.* Quiñones.

## Appeal from the District Court of San Juan.

No. 47.—Decided March 7, 1904.

Obligations—Account.—When an itemized account, containing all charges item by item, as well as the credits, amounts returned and deductions allowed, has been produced, it is necessary to specifically object to the items thereof, and not by means of vague allegations, and to specifically point out the errors or fraud committed therein.

Id.—Delay—Interest.—Persons obligated to deliver or to do a thing are in default from the time a judicial or etxra-judicial demand is made upon them for the fulfillment of their obligation, and they thereby become liable to the payment of the interest agreed upon, or, in the absence of an agreement, to the payment of legal interest.

### STATEMENT OF THE CASE.

This is an action prosecuted in the District Court of San Juan by Sobrinos de Portilla, as plaintiff, represented in this Supreme Court at first by Attorney Hilario Cuevillas, and afterwards by Attorney Jacinto Texidor, against Nicolás Quiñones Cabezudo, as defendant, represented by Attorney Rafael López Landrón, for the collection of a debt; which case is pending before us on appeal taken by Nicolás Quiñones Cabezudo from the judgment rendered by the aforesaid court, which reads as follows:

"Judgment.—In the city of San Juan, Porto Rico, April 4, 1903. An oral and public hearing was had of the declaratory action prosecuted by Attorney Hilario Cuevillas Hernández on behalf of the industrial firm, Sobrinos de Portilla, of this city, plaintiff, against Nicolás Quiñones Cabezudo, planter, a resident of Caguas, represented by Attorney Rafael López Landrón, for the collection of a debt.

"Under date of February 2, 1897, and bearing the signature of Quiñones Cabezudo, a letter was addressed to Sobrinos de Portilla, which reads as follows: 'We have on hand your valued favor of the 31st ulto. As for the goods pertaining to the bill therein referred to, we find exorbitant the price of five *pesos* charged for the key, and I hope you will reduce the same. I am now engaged in going over the

mes pasado. De los efectos correspondientes al borderó que indican, resulta con precio exagerado la llave que anotan en cinco pesos, por lo cual espero limiten más su importe. Ocupado en la revisión de las cuentas con esa respetable casa, me cuidaré, al terminar la operación, de ver en qué forma puedo atender á la remisión de fondos, puesto que para ello aguardo el resultado de inspección''; en Septiembre 26 de 1898, otra que dice: ''Correspondo á sus anteriores manifestándoles que hasta el próximo mes de Enero, en que dé principió á la zafra, no podré pasar á esa al arreglo y liquidación de nuestra cuenta. En la actualidad no hay azúcar ni dinero de qué disponer. Infinidad de reparaciones que necesitan las máquinas, no las hago hoy, por falta de dinero de qué disponer. Sírvanse tener paciencia'', continuando algo ininteligible; otra de Febrero 18 de 1898, que dice: ''Con el portador Don José Ríos remito á Ud. un giro á su favor contra Don Antonio Molina por la suma de $200 m/c. El mismo Ríos, quizás, le anote algunos artículos siempre que convengan en precio. Cuando publiquen las relaciones de precios que anualmente acostumbran, les estimaré me envíen una para gobierno. Deseo un extracto de cuenta corriente, con el fin de ver si estamos de conformidad; otra de Mayo de 1897, que expresa acompaña un giro por $400 m/c. que le abonarán en cuenta; y otra de 21 de Mayo de 1898, manifestando que al cesar las múltiples ocupaciones examinará la cuenta, que no hay quien compre azúcar, con ese motivo están los hacendados sin recursos, y que la bomba aleatoria pequeña número 1 les fué devuelta.

2. *Resultando*: que acompañando dichas cartas, Sobrinos de Portilla formuló demanda en 13 de Agosto de 1900, pidiendo se condene á Don Nicolás Quiñones Cabezudo al pago de $1652.43 moneda provincial, ó su equivalente, americana, intereses legales desde la demanda y en las costas, sentando como hechos: que el demandado estaba en relaciones con el demandante, quien le vendía efectos de herrería y le hacía trabajos para la hacienda, como así lo declara el primer asiento de la cuenta que presenta y fué pasada á Quiñones; que esa cuenta corriente continuó, remitiéndole Portilla de tiempo en tiempo un extracto de ella y enviándole, ó no, Quiñones, cantidades inferiores al saldo, sin expresar su conformidad, y si se le exigía, se excusaba con no tener tiempo para el examen, poniendo término Portilla á esa situación, exigiendo lo debido, y citando, como fundamentos de derecho, los Artículos 1901, 1101, 1108 y 1100 del Código Civil.

accounts with your esteemed firm, and when this is done I shall consider the manner of attending to the remittance of funds, for which I am waiting the result of the examination.' Another letter, dated September 26, 1898, reads: 'In reply to your previous letters I beg to state that until January next, when I shall commence grinding, it will be impossible for me to go to your city for the purpose of liquidating and settling our accounts. At present there is no sugar nor cash available. Many repairs are required on the machinery, which for the present cannot be attended to from lack of ready money. Please have patience'; the rest of the letter being somewhat unintelligible. Another, dated February 18, 1898, saying: 'By bearer, José Ríos, I send you a draft to your order on Antonio Molina for $200 currency. Said Ríos may order some articles, provided you both agree on price. When you get out your usual annual price list, please send me a copy for my guidance. I want an abstract of the account current so as to be sure our entries agree.' Another letter, dated May, 1897, stating that he is forwarding a draft for $400 currency, to be credited to his account; and another of May 21, 1898, advising that as soon as he is released from his numerous occupations he will examine the account; that no one is buying sugar, for which reason planters are without any means; and that the small No. 1 suction pump had been returned to them.

"With the aforesaid letters, Sobrinos de Portilla, on August 15, 1900, brought an action praying that Nicolás Quiñones Cabezudo be adjudged to pay one thousand six hundred and fifty-two *pesos* and forty-three *centavos*, provincial money, or its equivalent in United States currency, with legal interest from the date of the action, and costs, alleging the following facts: Defendant did business with plaintiff, who was accustomed to sell him hardware and perform work for the estate, as shown by the first entry of the account filed by him and which had been presented to Quiñones; said account current had gone on, Portilla sending him an abstract of the same, from time to time, and Quiñones remitting, or not, sums which did not cover the balance, without stating whether he found it correct or not, and whenever he was urged to do so, he excused himself upon the plea that he had no time to examine the account. This situation was brought to an end by Portilla, who demanded what was due him, citing as grounds of law articles 1901, 1101, 1108 and 1100 of the Civil Code.

"Defendant, in his answer, asked that the complaint be dis-

3. *Resultando*: que el demandado contestó pidiendo se le absuelva y estableciendo reconvención para que se condenase al actor á producir una cuenta corriente completa y general comprobada, con las costas al demandante: exponiendo como hechos: que desde 1889 Portilla y Quiñones sostienen cuenta corriente entre sí, tomando el actor á su cargo proveer al demandado de efectos de herrería, útiles de maquinarias agrícolas, accesorios y reparaciones mecánicas de la finca, á cambio de abonos en efectivo, por cuenta de aquéllos, que continuaron los cargos y abonos, remitiendo el extracto de su cuenta á Quiñones, no la cuenta detallada, bastándole que el actor no despachara nada sin su orden; que al recibir las cuentas nunca dejaba de anunciar reparos, reclamando contra el precio exagerado de alguna partida, previniendo moderación de valores, defectos de construcción, deducción de partidas ó artículos devueltos, encabezadas las cuentas con saldos importantes, que el demando les pidió produjeran la cuenta desde su origen y nunca pudo obtenerlo; que encargó varias coronas para las mazas del molino, las remitieron y no fué posible utilizarlas, devolvió varias de esas coronas y exigió se le descargase su importe de la cuenta sin conseguirlo; que en 1896 envió á Portilla una maza para acuñar y ajustar el eje, la repararon y al recibirla Quiñones, la montó y al segundo día de molienda se corrió el eje de su sitio, perdiéndose la caña cortada; que en otra ocasión encargó una bomba de vapor, se recibió y colocada á los seis ú ocho meses de funcionamiento regular, dejó de aspirar é impulsar las vinazas, siendo preciso desarmarla y advirtiéndose entonces que en su interior estaba revestido de hierro y no de bronce; y que fué otro fracaso una maza nueva con su eje; sentando como puntos de derechos los Artículos 1254, 1258, 1103 al 1106 y 1972.

4. *Resultando*: que el demandante contestó la reconvención solicitando se declare sin lugar, con las costas al demandado, alegando como hechos: no ser exacto consintiera Portilla en llevar cuenta corriente con Quiñones, ni en hacer nada de lo que dice y sí que tomaba del establecimiento lo que necesitaba, encargó trabajos, ofreció pagar y nó pagó cumplidamente: que al comprar efectos se remitía un borderó que los comprendía todos, con sus precios, no siendo exacto se enviaran extractos de cuentas; que no hubo reclamaciones

missed and set up a counter-claim praying that the plaintiff be adjudged to produce a verified general itemized account current, and that costs be imposed upon him. He alleged the following facts: That since 1899 Portilla and Quiñones had maintained a running account together, the plaintiff having charge of supplying defendant with hardware, agricultural machinery, accessories and attending to mechanical repairs for the estate, against cash payments on account; that the debits and credits continued, the plaintiff forwarding to Quiñones abstracts of his account, without the itemized account, and Quiñones demanding only that nothing should be dispatched without an order from him; that upon receipt of the accounts he had never omitted to report some error, either objecting to the exorbitant price of some of the items, and recommending moderation in values, or calling his attention to defects in construction, reduction of charges, or to some articles which had been retured; that as the accounts were headed with important balances, he had requested that they be produced from the beginning, which request had never been complied with; that he had ordered several crowns for the rollers of the mill, which were sent, but could not be used; he returned some of these, asking that their cost be deducted from the account, but it was not done; that in 1896 he had sent Portilla a roller for the purpose of having it fastened with wedges and adjusted to the axle; they repaired it and when received by Quiñones it was mounted, but on the second day of grinding the axle shifted from its place, and the cane that had been cut was lost; that on another occasion he had ordered a steam-pump, which was received and fixed in its place, but after working regularly for six or eight months, it ceased to draw and impel the lees (*vinazas*), and it became necessary to take it to pieces, when it was noticed that its interior was lined with iron instead of brass; that a new roller with its axle proved another failure. As points of law in support of his claim he cited articles 1254, 1258, 1103 to 1106, and 1972.

"The plaintiff, in his answer to the counter-claim, prayed that the same be dismissed, with costs against the defendant, alleging the following facts: That it was not true that Portilla had consented to keep a running account with Quiñones or to do any of the things asserted by him, but that he took from the establishment what he needed, ordered work, offered to pay, and failed to do so punctually; that when he made purchases a bill was sent him including all the articles and their prices, and it was not true that abstracts of accounts were sent; that there had been no claims, but excuses for not paying, the

y sí excusas para no pagar, existiendo conformidad con las cuentas, pues en 2 de Febrero de 1897 dijo las estaba inspeccionando y después en 18 de Febrero y 7 de Marzo remitió fondos; que alegar mala construcción, trastornos, etc., de nada sirve, porque ningún fabricante responde de montura que no hace, y porque en 18 de Febrero de 1898 remitió $200 y en 7 de Marzo de 1897, $400, á cuenta, y que presentada una cuenta con carga y data ascendente á $1652.43 debe reparar·y fijar valor á los reparos, invocando como fundamentos de derecho los Artículos 547 y 548 de la Ley de Enjuiciamiento Civil; que nadie puede ir contra sus propios actos pues todo el que recibe una cuenta debe aceptarla, rechazarla ó repararla y no hacer pagos á cuenta y dejar pasar tres años sin pagar el saldo.

5.    *Resultando*: que abierto á prueba el juicio, de las del actor aparecen reconocidas por el demandado las cartas producidas con el escrito de pruebas obrantes de folios 38 al 53 de los autos, pareciéndoles firmadas por Don Zoilo Giménez por su orden las que por éste están suscritas, en cuyas cartas constan los pedidos que en ella se hacen de los efectos que cada una refiere, entre ellas la de 11 de Marzo dè 1895, que dice: ''me extraña, pero me extraña mucho, que no admitiesen los mil pesos como saldo de los mil doscientos setenta y cinco pesos noventa y ocho centavos, pues así fué convenido con Don José. Si éste no tenía facultades para esta transacción, no haberla hecho.   La rebaja no es tan grande, pues en esta cantidad entran 72 pies de correas y otras reclamaciones que desde hace mucho tiempo he venido haciendo, así como la reclamación de una corona que les devolví por defectos de fabrica, quiere decir que por la transacción queda toda arreglado''; la de 28 de Enero de 1898 qué dice: ''Dentro de pocos días enviaré alguna azúcar á la Capital y daré orden á Don Antonio Molina de hacerle el mayor abono posible''; conteniendo la de 18 de ,Enero de 1899, que la zafra comenzará en breve y para los demás particulares se servirán entenderse con su apoderado general, el Procurador Don Rafael Arce; la cuenta de 22 de Septiembre de 1900 de lo que adeuda al actor el demandado, detallada partida por partida, desde Enero 17 de 1895, en la que constan los abonos, devoluciones de efectos y rebajas, notándose un abono de $300 en 13 de Julio de 1896, otro en Màyo 21 de 1897, por $400, y otro en 26 de Febrero de 1898, por $200, siendo los pedidos posteriores á este último abono, de efectos cuyo valor suma $76.30 y balanceada la

accounts found correct, for on February 2, 1897, he reported that he was examining them, and later, on February 18 and March 7, he remitted funds; that the alleging of defective construction, troubles, etc., signified nothing since no manufacturer can be held responsible for defects in machinery not put up by himself, and because on February 18, 1898, he remitted $200, and on March 7, 1897, $400, on account, and an itemized account, with debits and credits, amounting to $1652.43, having been presented, the errors noticed in the items and values should be specifically pointed out; and citing as grounds of law articles 547 and 548 of the Law of Civil Procedure; that no one can go against his own acts, and that the person who receives an account should either accept or reject it, or signify his objection thereto, instead of making payments on account, and allowing three years to pass without settling the balance.

"When the case was opened for the admission of evidence, defendant acknowledged the letters introduced by plaintiff, found at folios 38 to 53 of the record, which bear the signature of Zoilo Giménez, as having been written and signed by his order, said letters containing the orders of articles referred to therein; and in one of which letters, dated March 11, 1895, the following statement appears: 'I am surprised, and very much so, at your refusal to accept the one thousand *pesos* in settlement of the balance of one thousand two hundred and seventy-five *pesos* and ninety-eight *centavos,* for it was so agreed with Don José. If the latter was not authorized to act in the matter, he should have abstained from doing so. The reduction is not so very great, for it includes seventy-two feet of leather belt and other claims I have been insisting upon for some time, as also the claim for a crown which I returned owing to defects in manufacture. So then, by this transaction, everything would be settled;' and in the one dated January 28, 1898, it is said: 'In a few days I shall ship some sugar to the capital and shall instruct Mr. Antonio Molina to make you the largest payment possible'; while in one of January 18, 1899, he advised that grinding would begin shortly and for other particulars referred to his attorney, the solicitor, Rafael Arce. Defendant also identified the account of September 22, 1900, showing the amount of his indebtedness to plaintiff, with all the entries from January 17, 1895, and including all the payments and other credits for articles returned and reductions allowed, among which credits appear: one for $300, on July 13, 1896; another on May 21, 1897, for $400; and another on February 26, 1898, for $200; the goods ordered, subsequently to the

cuenta en Diciembre de 1896, arrojó un debe por $2577.84, con abonos y rebajas, valor $670.25, pasando en Diciembre de 1896 un saldo al debe por $1907.59, que con pedidos, subió nuevamente, en 26 de Febrero de 1898, á $2288.29, que deducidos $635.86, de rebajas y abonos, arroja el saldo de $1652.43.

6. *Resultando* : que como de prueba del actor, la confesión del demandado, expresando nunca ha hecho convenio con Portilla; que para terminar y transar y no ocuparse más del asunto, ofreció á dichos Señores una cantidad que ordenó pagara Don Antonio Molina, reservándose él, el derecho de reclamar luego, si tenía motivo para ello; que en aquella época entendía no adeudar nada, pero necesitaba le hiciera un trabajo la casa y para evitar pérdidas en la hacienda creyó que mil pesos no arruinaban á un hacendado y mandó pagarlos; que no puede precisar si los pagaron porque se entendía en eso su comisionista; que Don Zoilo Giménez era azucarero de su hacienda, que hoy no tiene ésta, administrándola Don Ramón Quiñones Cabezudo; que nunca ajustó que de casa de Portilla fueran á montar las piezas á la finca, haciendo las monturas bajo la dirección de Don Federico Brover, reconocido como ingeniero mecánico; que ha recibido todas las cuentas de Portilla y las entregó, bien al juzgado ó al Sr. López Landrón, según cree, no pudiendo asegurar que las presentadas por el Sr. López Landrón agregadas á los autos que se le ponen de manifiesto, sean las mismas que estuvieron en su poder.

7. *Resultando* : que cotejada la cuenta de lo adeudado por el demandado al actor, con los libros de éste, resulta que todas las partidas se encuentran debidamente anotadas en los libros Diario y de cuentas corrientes, sin que exista equivocación, estando los libros sellados y legalizados; que requerido el demandado para presentar las cuentas y documentos recibidos de Portilla, manifestó se dirigieran á su abogado para que los presentara, y éste lo efectuó en 16 de Agosto, con la producida á 23 de Enero de 1895, y abarca desde el 15 de Enero de 1894 y termina con un saldo á favor de Portilla de $1249.49, siendo todas las demás producidas anteriores, desde 1888 á dicha fecha, á excepción de la que empieza en 20 de Diciembre de 1896 y termina en 26 de Febrero de 1898, con el saldo que se cobra en esta demanda, de la que se ha hecho referencia en el resultando anterior, y en cuya cuenta aparecen los abonos y rebajas que en total suman $635.86.

latter credit, amounting to $76.30. Said account having been balanced in December, 1896, showing a debit of $2577.84, which, with payments and deductions aggregating $670.25, was reduced to $1907.25 in December, 1896; then, with new orders, it was increased to $2288.29 on February 26, 1898, and after deducting therefrom $635.86 of reductions and payments, it showed a balance of $1652.43.

"The plaintiff proposed as evidence defendant's confession in court to the effect that he had never made any agreement with Portilla; that in order to settle up and dismiss the subject, he had offered those gentlemen a certain sum which he ordered Antonio Molina to pay, reserving his right to make a claim afterwards, if there were occasion for it; that he was at that time under the impression that he owed them nothing; but he needed some work to be done by the firm, and as it was a question of preventing losses to the estate, and one thousand *pesos* would not ruin a planter, he ordered the money to be paid; that he could not state positively that the payment was made, because his agent had charge of these matters; that Zoilo Giménez was the sugar expert of the estate, but was no longer there, Ramón Quiñones Cabezudo being then a manager; that he had never dealt with the firm of Portilla for putting up the pieces of machinery on the estate, the mounting having been done under the direction of Frederick Brover, a well-known mechanical engineer; that he had received all the accounts of Portilla and had handed them over to either the court or to Mr. López Landrón, according to his belief, but he could not say positively that those presented by Mr. López Landrón and filed with the record were the ones that he had had in his possession.

"Upon comparing the account showing the amount due by the defendant to the plaintiff with the books of the latter, the items were found to have been duly entered in the journal and accounts-current book, without any errors, said books being stamped and legalized. Defendant being called upon to present the accounts and documents received from Portilla referred for this purpose to his lawyer, who presented them, together with the account he rendered on January 23, 1895, opening with January 15, 1894, and closing with a balance of $1249.49 in favor of Portilla, all the others produced, since 1888, being of earlier date, except the one opening December 20, 1896, and closing February 26, 1898, with the balance forming the subject-matter of the complaint, to which reference has already been made in the preceding paragraph, and wherein appeared credits and reductions aggregating $635.86.

8. *Resultando*: que los peritos declararon que las fundiciones y establecimientos de ventas de piezas mecánicas, no responden de defectos internos de dichas piezas, á no ser que la cláusula del contrato les obligue á ello, que eso ocurre porque aún las piezas mejor y con todo esmero fundidas, suelen tener defectos que no se pueden evitar ni se pueden conocer, que tampoco se obligan á garantir el resultado de la maquinaria que se venda si no hacen ellos el montaje, porque el descuidado é imperito produce mal funcionamiento y la rotura de la misma máquina.

9. *Resultando*: de la prueba del demandado la confesión del actor contestando que las cuentas anteriores se cerraron en 1894 con los mil pesos que abonó Quiñones y del 1895 al 1899 es cuenta nueva; que en la cuenta del 94 antes de cerrarla se hicieron por el demandado reclamaciones, por lo cual se rebajó en aquella cuenta: que Quiñones Cabezudo ha reconocido la cuenta, pues están las cartas y, siempre que recibía efectos contestaba y que el saldo fué arreglado con un individuo que dice el actor envió á Caguas á ese fin; requeridos Ochoa Hermanos exhibieron el asiento del libro en que consta que el 2 de Octubre de 1893, dice: Nicolás Quiñones. Por gastos de 1c. maquinaria recibida de s/c por v. Olinde Rodriguez de 5 del actual; informe de Sobrinos de Ezquiaga de constar en los libros que D. Nicolás Quiñones Cabezudo embarcó para España en el vapor correo Alfonzo XII el 15 de Agosto de 1892, no pudiendo expresar en qué vapor regresó por carecer de anotaciones detalladas, por traer los vapores sólo simples relaciones del pasage, que no ha sido posible encontrar; declarando tres testigos que actor y demandado llevaban cuentas enviando aquél efectos de maquinaria y pagando el otro sin plazo fijo, haciendo éste varias reclamaciones por descomposición de algunos efectos devolviendo algunas piezas y de ésto hará ocho ó diez años, dice un testigo; y los otros dos que las reclamaciones de las coronas fué ha nueve ó diez años, y uno de éstos que lo de la cuenta en aquellos días, declarando otro testigo, que dice es maquinista práctico por tanto sin título, y que lo era de la hacienda, que ha visto se han roto coronas de las fabricadas por Portilla, teniendo Quiñones que encargarlas á Inglaterra: que la rotura de las coronas ocurrió hace unos diez años y la hacienda no tenía coronas ni mazas de repuesto: que el eje de la maza á los tres días de colocado se corrió y tuvo Quiñones que suspender la molienda, quedando caña cortada en la plaza, echándose á perder la mayor parte: que también una bomba funcionó bien y á los ocho meses dejó de fun-

"The expert witnesses testified that foundries and establishments engaged in the sale of machinery are not responsible for internal defects in the pieces thereof, unless bound by contract. This is because the best and most carefully cast pieces are liable to have flaws which cannot be avoided or detected. Nor do they engage to guarantee the result of machinery sold, unless put up by themselves, because when the mounting is done by careless or inexperienced hands it is apt to work badly or to break.

"The defendant submitted as evidence plaintiff's confession in court to the effect that the previous accounts were closed from 1894 with the one thousand *pesos* paid by Quiñones, and that the account from 1895 to 1899 was a new one; that before closing the account for 1894, claims were made by Quiñones which were deducted therefrom; that Quiñones Cabezudo had acknowledged the accounts as shown by the letters, and whenever goods were sent him he acknowledged the receipt thereof, and that the balance had been adjusted with a party who had been sent to Caguas for the purpose. Upon requisition Ochoa Hermanos exhibited the entry in their book, made under date of October 2, 1893, which reads: 'Nicolás Quiñones. To expenses one case of machinery received for his account by steamer "Olinde Rodriguez" on the 5th inst.'; report of Sobrinos de Ezquiaga stating that it appears on the books that Don Nicolás Quiñones Cabezudo sailed for Spain on mail steamer 'Alfonso XII,' August 15, 1892, it being impossible to find out on what steamer he had returned because there was no detailed memoranda, the steamers giving out only a simple list of passengers, and this could not be found. Three witnesses testified that plaintiff and defendant kept a running account, the former supplying machinery to the latter, who had no specified time in which to make payments; that the latter (Quiñones) had presented several claims for goods out of gear and returned some of the pieces. This had happened eight or ten years ago, according to one witness. and nine or ten years, according to the other two witnesses, one of whom testified *that as to the account in those days,* and another witness who claimed to be a practical engineer, and therefore without a title, testified that while acting as such on the estate, he had seen crowns cast by Portilla break, Quiñones being obliged to order them from England; that the breaking of the crowns had occurred some ten years ago, and that the estate had no extra crowns or rollers; that the axle of the roller had shifted three days after it had been adjusted, Quiñones being compelled to stop grinding, which

cionar y examinada resultó que las vinazas se habían corrido, notándose que el revestimiento interior no era de bronce; que una pieza de una maza estaba desgastada y á poco de montar la encargada á Portilla se notó se había aflojado, teniendo que desmontarla y arreglarla y que las piezas al recibirse no se reconocían.

10. *Resultando*: que, terminadas las pruebas, los defensores de las partes alegaron lo que estimaron conveniente y al votar la sentencia disintió de la mayoría el Juez Asociado Don José Tous Soto.

*Siendo* Ponente en este pleito el Juez Presidente Don Juan Morera Martínez.

1. *Considerando*: que aceptando el demandado al contestar la demanda sostenía cuenta con Portilla, quién le proveía de efectos de herrería, útiles de maquinaria, accesorios y reparaciones mecánicas á cambio de abonos en efectivo, todo ello implica el reconocimiento de la cuenta por el actor presentada y por tanto el deber de impugnar concretamente las partidas que pudieran contener engaño ó error para que sobre ellas versara la discusión y prueba en esos dos períodos del juicio.

2. *Considerando*: que los errores de cuentas no pueden impugnarse por medio de alegaciones vagas, sino determinando cuál es la cifra equivocada ó cual es el engaño padecido, y que producidas por el actor al demandado á su debido tiempo las cuentas, fueron á instancia de aquél presentadas por el defensor del demandado, quedando liquidadas y cerradas hasta 1894 inclusives, los mil pesos que Quiñones abonó, según éste y el demandante han confesado en el juicio, siendo nueva por lo tanto la del 95 al 98.

3. *Considerando*: que las reclamaciones por el demandado hechas, según sus mismos testigos, se refieren á las de nueve ó diez años ántes, ajenas por lo tanto al saldo de la cuenta que se reclama y comprendidas en la transacción ó convenio, por actor y demandado confesada, que cerró la cuenta de 1894 sin que sea apreciable según dicha prueba y la pericial practicada la referente á 1896 por una maza y ajustar el eje, porque no habiéndola montado Portilla, ni mecánico alguno, y sucedido el percance á los tres días de colocada, no puede exigírsele al actor responsabilidad alguna en ese caso y los

entailed the loss of most of the cane that had been cut; that also a·
pump that had done good service for eight months stopped working,
and upon examination it was found that the parts had shifted and
that the interior lining was not of brass; that one of the pieces of a
roller was worn out, and shortly after putting up the one ordered
from Portilla it was noticed that it had become loose, it being neces-
sary to dismount it and have it fixed; and that the pieces were not
examined when received.

"All the evidence having been taken, counsel for both parties
presented their arguments, after which the court rendered judgment,
Judge José Tous Soto dissenting:

"Presiding Judge Juan Morera Martínez prepared the opinion of
the court.

"The defendant has admitted in his answer to the complaint that
he had maintained an account with Portilla, who supplied him with
iron wares, tools and accessories, and made repairs ·of machinery
for him, against cash payments, and all this implies an acknowledg-
ment of the account presented by the plaintiff, and therefore the ob-
ligation to controvert specifically such items as might contain fraud or
error, so as to make them the object of the discussion and evidence
in those two stages of the hearing.

"Errors in accounts cannot be opposed by means of indefinite
allegations, but by pointing out the figure wherein the alleged error
or fraud has been committed. The plaintiff had in due time presented
the accounts to the defendant, which, at the request of the former, were
submitted by the latter's counsel. Said accounts had been settled
and closed up to 1894, with the one thousand *pesos* paid by Quiñones,
as has been admitted by both parties at the hearing, and therefore
those dating from 1895 to 1898 were new accounts.

"The claims urged by the defendant, according to his own
witnesses, refer to nine or ten years back, and therefore have nothing
to do with the balance of the account at issue, but are included in the
settlement or agreement admitted to have been arrived at by both
plaintiff and defendant, when the account for 1894 was closed. Nor
can the claim referring to 1896, for a roller and defect in the adjust-
ment of an axle, be considered, because said roller not having been
mounted by Portilla nor any mechanic, and the incident occurring
three days after it had been put up, the plaintiff cannot be held re-
sponsible in this case or others of the same nature, nor could such a

demás idénticos, por no resultar de dicha prueba quepa y pueda exigírsele, dadas dichas circunstancias y consideraciones.

4. *Considerando*: que en la cuenta objeto de la demanda no sólo constan detallados todos los cargos, partida por partida, si que los abonos, devoluciones y rebajas, siendo esos abonos de 1896, 1897 y 1898, arrojando el saldo reclamado de $1652.43 y en volviendo ese reclamo una acción por efectos vendidos y entregados y por el balance no pagado del precio de los mismos, las vagas y evasivas contestaciones del demandado, respecto á la entrega y aceptación de los efectos vendidos, su valor razonable y la falta de pago, no son suficientes para absolverle ni fundar su reconvención, mientras que las pruebas de que antes se ha hecho mérito y especialmente sus cartas traídas á los autos que han sido identificadas, no dejan duda alguna respecto de la certeza de aquellos tres extremos esenciales, máxime estando acreditado que recibió oportunamente las cuentas detalladas, y á pesar del tiempo transcurrido, jamás impugnó específicamente sus partidas.

5. *Considerando*: que incurren en mora los obligados á entregar ó hacer alguna cosa desde que se les exija judicial ó extrajudicialmente el cumplimiento de su obligación, incurriendo por mora en el pago de los intereses convenidos ó en el legal.

*Vistos* los Artículos 1067, 1075, 1403, 1404, 1500 y 1501 del Código Civil y 326 del Código de Comercio.

*Fallamos*: que debemos declarar y declaramos con lugar la demanda deducida por la Sociedad Sobrinos de Portilla contra Don Nicolás Quiñones Cabezudo, y, desestimando la reconvención condenamos al demandado pague al demandante los mil seiscientos cincuenta y dos pesos cuarenta y tres centavos del saldo de su cuenta, ó su equivalente en oro americano, con los intereses al tipo legal desde la fecha en que se le citó para contestar la demanda y en las costas.

*Así* por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos: Juan Morera Martínez, Frank H. Richmond y José Tous Soto''.

*Resultando*: que notificada dicha sentencia á dicho Nicolas Quiñones Cabezudo, interpuso contra ella recurso de apelación, que fué admitido, ordenándose que se remitieran los autos á este Tribunal, previa citación y emplazamiento de las partes, por el término legal; y personadas éstas, se le

responsibility be justified by the evidence and attending circumstances.

"The account which forms the subject-matter of the complaint not only contains all the charges, in detail, but also the credits for payments, goods returned and deductions allowed, during 1896, 1897 and 1898, showing a balance of $1652.43, which is the amount demanded; and inasmuch as this demand involves an action for goods sold and delivered, or for the outstanding balance thereof, the vague and evasive replies of defendant as to the delivery and acceptance of the goods sold, the moderation of the prices charged and his defaults in payments, are not sufficient to release him or furnish ground for a counter-claim; while on the other hand the evidence referred to, and especially his letters filed with the record and acknowledged by him, leave no doubt as to those three essential points, the more so when it has been shown that he in due time had received the detailed accounts, and notwithstanding the time elapsed, had never specifically objected to the items thereof.

"Persons obliged to deliver or to do something are in default from the moment when the creditor demands the fulfillment of their obligation, judicially or extrajudicially, the obligation in case of default consisting in the payment either of the interest agreed upon, or the legal interest.

"In view of articles 1067, 1075, 1403, 1404, 1500 and 1501 of the Civil Code, and article 326 of the Code of Commerce, we adjudge that we should declare and do declare that the action brought by the firm of Sobrinos de Portilla against Nicolás Quiñones Cabezudo, does lie, and dismissing the counter-claim, condemn the defendant to pay the plaintiff the sum of one thousand six hundred and fifty-two *pesos* and forty-three *centavos*, balance of his account, or its equivalent in U. S. gold, with legal interest thereon, at the legal rate from the date the said defendant was summoned to answer the complaint, and impose upon him the costs.

"Thus by our decision, finally adjudging, we pronounce, order and sign. Juan Morera Martínez, Frank H. Richmond, José Tous Soto."

Notice of the foregoing judgment having been served upon said Nicolás Quiñones Cabezudo, he took an appeal therefrom, which was allowed, and the record forwarded to this court after citation of the parties, during the period determined by law. Upon their appearance the appeal was con-

dió la tramitación correspondiente, habiéndose señalado día para la vista, en la que los abogados de las respectivas partes alegaron lo conducente á sus respectivas pretensiones.

Abogado del apelante: *Sr. López Landrón.*

Abogados del apelado: *Sres. Cuevillas y Texidor.*

El Juez Asociado Sr. Sulzbacher, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Aceptando* los fundamentos de hecho y de derecho de la sentencia. apelada.

*Vistas* las disposiciones legales que en la misma se citan.

*Fallamos*: que debemos confirmar y confirmamos la sentencia que, en cuatro de Abril de mil novecientos tres, dictó la Córte de Distrito de San Juan, con las costas á cargo del apelante: y devuelvánse los autos con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados Hernández, Figueras y MacLeary.

---

## Ex-Parte Rodríguez.

Apelación procedente de la Corte de Distrito de San Juan.

No. 70.—Resuelto en Marzo 10, 1904.

Dominio.—Posesion para Adquirirlo.—La posesión quieta y pacífica de una finca, por parte del promovente y por espacio de cinco meses, sin comprobación de ningún otro extremo, no es suficiente para declarar acreditado á su favor el dominio de la misma.

### EXPOSICIÓN DEL CASO.

En los autos seguidos en el Tribunal del Distrito de San Juan á instancia de Don Miguel Rodríguez Rivera, sobre acreditar el dominio de una finca rústica, pendientes ante *nos* á virtud de recurso de apelación interpuesto por la representación del promovente contra la sentencia dictada por el

ducted under the proper procedure, a day being set for the hearing, at which counsel for the respective parties offered such arguments as were pertinent to their respective claims.

*Mr. Rafael López Landrón,* for appellant.

*Messrs. Cuevillas* and *Texidor,* for respondent.

Mr. Justice Sulzbacher, after making the above statement of facts, delivered the opinion of the court.

The findings of fact and conclusions of law of the judgment appealed from are accepted.

In view of the legal provisions cited therein, we adjudge that we should affirm and do affirm the judgment rendered on April 4, 1903, by the District Court of San Juan, with costs against appellant. The record is ordered to be returned with the proper certificate.

Chief Justice Quiñones and Justices Hernández, Figueras and MacLeary concurred.